UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHERYL D. KALMANOFF,<br><br>                    Plaintiff,<br><br>       v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>                    Defendant. | Case No. C14-982-RSM-BAT<br><br>**REPORT AND RECOMMENDATION** |

Sheryl Kalmanoff appeals the denial of her Social Security Income application, seeking remand for an award of benefits. She contends the ALJ erred by (1) improperly discounting the credibility of her statements, (2) erroneously evaluating the opinions of treating physician John Lank, M.D., and examining psychologist Aaron Russell, Psy.D.; and (3) basing his RFC assessment solely on the opinions of non-examining doctors. Dkt. 17. As discussed below, the ALJ erred in evaluating Dr. Russell's opinion. Accordingly, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

## BACKGROUND

Following a hearing, the ALJ issued a final decision finding that since Ms. Kalmanoff's alleged disability onset date of May 5, 2011, the protective filing date for her benefits

REPORT AND RECOMMENDATION - 1

application, she was not disabled. Tr. 15-26. Utilizing the five-step disability evaluation process, the ALJ found that pseudoseizures, idiopathic ventricular tachycardia, TMJ status post full dental extraction surgery, headaches, depressive disorder, anxiety disorder, and pain disorder were severe impairments that did not meet or equal the requirements of a listed impairment. Tr. 17-18; *see* 20 C.F.R. § 416.920; 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found that Ms. Kalmanoff had the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. § 416.967(b), subject to a number of postural, environmental, cognitive, and social limitations. Tr. 20. Based on this RFC and the testimony of a vocational expert, the ALJ found Ms. Kalmanoff could perform jobs existing in significant numbers in the national economy. Tr. 26. Therefore, the ALJ found Ms. Kalmanoff not disabled. *Id.*

## DISCUSSION

**A.    Credibility**

The ALJ provided at least two valid reasons, supported by substantial evidence, to discount the credibility of Ms. Kalmanoff's testimony. First, the ALJ found that Ms. Kalmanoff did not report her alleged balance difficulties to her treating physician, Dr. Lank. Tr. 22. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ properly considered claimant's failure to report symptoms to his physicians). Ms. Kalmanoff argues the ALJ's reasoning is not supported by substantial evidence because she reported intermittent dizziness to Dr. Lank. *See* Tr. 458, 577, 593, 579. As discussed below, this argument fails.

At the hearing, Ms. Kalmanoff testified that she is unable to walk alone because she has "no balance" and that her balance problems occur at least twice daily. Tr. 66-67. The ALJ recognized that Ms. Kalmanoff reported intermittent dizziness to Dr. Lank, but reasonably concluded that these reports did not reflect the same balance difficulties alleged at the hearing.

REPORT AND RECOMMENDATION - 2

Tr. 22.  *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).  Ms. Kalmanoff reported dizziness during appointments on October 6, 2011 and May 1, 2012.  Tr. 458, 577-79.  But during the May 1, 2012 visit, Ms. Kalmanoff reported that the intermittent dizziness had been ongoing for only the past several days, and she was concerned that it was caused by a possible ear infection.  Tr. 577.  Dr. Lank noted that the dizziness was "resolved, no evidence of infection.  No treatment needed."  Tr. 579.  During Ms. Kalmanoff's next appointment on May 31, 2012, she did not report dizziness or any balance difficulties.  Tr. 581.  On July 22, 2012, Ms. Kalmanoff complained of dizziness again, but this was likely a side effect from a new migraine medication.  Tr. 593.  Dr. Lank discontinued the medication, and during Ms. Kalmanoff's next appointment on August 13, 2012, she did not report dizziness or balance problems.  Tr. 597.  Based on this record, it was not unreasonable for the ALJ to conclude that Ms. Kalmanoff did not report her alleged ongoing balance problems to Dr. Lank.  *See Greger*, 464 F.3d at 972.

   Ms. Kalmanoff also argues the ALJ's finding is not supported by substantial evidence because medical records from before the alleged onset date note a history of falling and balance problems.  Tr. 383 (3/29/11 emergency room report noting a history of falling), 335 (9/13/06 treatment note from former treating physician noting balance problems).  She contends that because Dr. Lank had been treating her since 2007, the absence of notation in more recent records is not indicative of an inconsistency between her testimony and the medical record.  It was not improper, however, for the ALJ to rely on evidence from the relevant time period.  *See Greger*, 464 F.3d at 972 (ALJ properly rejected credibility of claimant's testimony because,

REPORT AND RECOMMENDATION - 3

1  among other reasons, "*[d]uring the relevant six-month period and into 1999*," the claimant did

2  not report symptoms) (emphasis added).

3      Second, the ALJ found that Ms. Kalmanoff complained of continued chronic pain, but

4  reported to Dr. Lank that medications allow her "to be more functional and pain-free, and she is

5  able to perform activities of daily living while on medication." Tr. 22. *See Tonapetyan v.*

6  *Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ appropriately considers inconsistency with the

7  evidence in rejecting a claimant's testimony). This inconsistency is supported by substantial

8  evidence, namely the May 1, 2012 treatment note that the ALJ accurately summarizes in his

9  decision. Tr. 577. Moreover, as the Commissioner points out, Ms. Kalmanoff did not argue

10 error in this finding in her opening brief, and therefore any challenge is waived. *See Zango, Inc.*

11 *v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("[A]rguments not raised by a

12 party in an opening brief are waived.") (citing *Eberle v. Anaheim*, 901 F.2d 814, 818 (9th Cir.

13 1990)).

14     Because the ALJ gave at least two clear and convincing reasons, supported by substantial

15 evidence, to discount Ms. Kalmanoff's credibility, the ALJ's credibility determination should be

16 affirmed even if the other reasons Ms. Kalmanoff challenges are invalid. *See Carmickle v.*

17 *Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason

18 among other reasons to discount a claimant's credibility does not negate the validity of the

19 overall credibility determination and is at most harmless error where the ALJ provides other

20 reasons that are supported by substantial evidence).

21 **B.**    **Medical opinion evidence**

22     *1.*    *Dr. Lank, treating physician*

23     The ALJ provided at least two specific and legitimate reasons, supported by substantial

REPORT AND RECOMMENDATION - 4

evidence, to reject the August 13, 2012 opinion of Dr. Lank. Accordingly, any erroneous reason the ALJ provided was harmless. *See id.*

First, the ALJ found that Dr. Lank's opinion was based primarily on Ms. Kalmanoff's self-reports. Tr. 23. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.") (quoting *Morgan*, 169 F.3d at 602); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("[T]he treating physician's prescribed work restrictions were based on Bray's subjective characterization of her symptoms. As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements."). This finding is supported by substantial evidence. The treatment note that corresponds with Dr. Lank's opinion includes a lengthy summary of Ms. Kalmanoff's reports regarding her impairments and functional limitations. Tr. 597. Ms. Kalmanoff reported "that she can sit for no more than 15-20 minutes at a time without having to lie down. Can stand for no more than 15-20 minutes without needing to sit." *Id.* As the ALJ concluded, Dr. Lank's opinion reflects exactly these limitations, and there is no evidence in the record that he came to this opinion based on an independent evaluation of Ms. Kalmanoff's functional limitations. Tr. 23, 589. Other aspects of Dr. Lank's opinion also appear to be based on Ms. Kalmanoff's self-reports, such as his conclusion that "most days are bad days" for Ms. Kalmanoff. Tr. 591.

Ms. Kalmanoff nevertheless argues that Dr. Lank's opinion is supported by her constant pain and sedation from medication, which is consistent with his treatment notes. But Dr. Lank's treatment notes are not entirely consistent with his opinion. For example, as the ALJ noted, Dr. Lank's May 1, 2012 treatment note states that medications allow Ms. Kalmanoff "to be more

REPORT AND RECOMMENDATION - 5

1   functional and pain-free. Able to perform [activities of daily living] while on medication." Tr.
2   577. In addition, Ms. Kalmanoff denied "sedation, constipation, shortness [of] breath, or other
3   side effects" from her medications. *Id.* The ALJ is responsible for resolving conflicts in the
4   medical record, *Carmickle*, 533 F.3d at 1164, and when, as here, evidence reasonably supports
5   either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for
6   that of the ALJ, *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

7       Ms. Kalmanoff also posits that Dr. Lank based his opinion on their significant treatment
8   relationship and his observations of her symptoms and medication side effects. *See* Tr. 600 (Dr.
9   Lank's opinion that "due to the significant side effects of medication, associated depression and
10  anxiety, associated pseudoseizures often triggered by pain and stress she is not capable of
11  working in any capacity"). But, as the ALJ found, his treatment notes reflect few objective
12  findings that support the degree of limitation he assessed. Tr. 23. *See Thomas v. Barnhart*, 278
13  F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including
14  a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical
15  findings."). On May 18, 2011, Dr. Lank observed that Ms. Kalmanoff was alert, cooperative, in
16  no apparent distress, and her neurologic exam was grossly normal. Tr. 504. On October 6,
17  2011, Ms. Kalmanoff reported medication side effects, but Dr. Lank did not observe the side
18  effects himself; rather, he noted that Ms. Kalmanoff was alert, in no distress, had TMJ
19  tenderness, and had a grossly normal neurologic examination. Tr. 459. On May 1, 2012, Ms.
20  Kalmanoff reported no medication side effects and that medication allowed her to be more
21  functional and pain-free. Tr. 577. Dr. Lank observed that she appeared well, was alert and in no
22  apparent distress, had appropriate speech and thought process, had no agitation or psychomotor
23  retardation, had tender TMJ joints, and her neurologic exam was nonfocal. Tr. 579. On May 31,

REPORT AND RECOMMENDATION - 6

2012, Dr. Lank made similar findings on examination. Tr. 583-84. On July 22, 2012, Ms. Kalmanoff complained of side effects from a new migraine medication, and Dr. Lank noted that she was ill appearing. Tr. 593-94. Otherwise, his examination findings were unremarkable. Tr. 595. Dr. Lank's examination findings were essentially the same during their next appointment on August 13, 2012. Tr. 597-600. Contrary to Ms. Kalmanoff's assertions, these treatment notes do not establish that Dr. Lank observed her symptoms and medication side effects. As such, Ms. Kalmanoff fails to establish that the ALJ erred in concluding that Dr. Lank based his opinion predominately on Ms. Kalmanoff's statements regarding her symptoms and limitations.

Second, the ALJ rejected Dr. Lank's opinion, which included a number of postural limitations, because it was inconsistent with a September 2011 opinion that Ms. Kalmanoff had no postural restrictions. Tr. 23. *See Morgan*, 169 F.3d at 603 (ALJ appropriately considers internal inconsistencies within and between physicians' reports). Ms. Kalmanoff argues this inconsistency does not reasonably support the ALJ's rejection of Dr. Lank's opinion because the form he filled out in September 2011 was different from the one he completed in August 2012. But Ms. Kalmanoff's assertions do not change the fact that in September 2011, Dr. Lank checked a box indicating that she had no postural restrictions, while in August 2012, he checked boxes indicating that Ms. Kalmanoff could only rarely stoop, bend, crouch, and squat. Tr. 539, 590. "Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount the opinions of [medical providers] falls within [the ALJ's] responsibility." *Morgan*, 169 F.3d at 603. Accordingly, Ms. Kalmanoff fails to establish error.

2.    *Dr. Russell, examining psychologist*

In June 2011, Dr. Russell examined Ms. Kalmanoff at the request of the Social Security

1  Administration. Tr. 512-16. He diagnosed pain disorder, mood disorder not otherwise specified,
2  and rule-out bipolar disorder. Tr. 515. Dr. Russell opined Ms. Kalmanoff had a "limited to fair"
3  ability to understand, remember, and carry out very short and simple instructions, understand and
4  remember detailed instructions, and maintain attention and concentration. Tr. 516. He opined
5  these abilities seemed contingent on Ms. Kalmanoff's current pain, physical state, and other
6  reported medical problems. *Id.* He also opined she had a "limited to poor" ability to sustain
7  ordinary routine without special supervision, and a "limited" ability to complete a normal
8  workday and workweek without interruption at a constant pace. *Id.* Dr. Russell further opined
9  Ms. Kalmanoff had a "limited" ability to interact with coworkers and the public, and there was a
10 "high likelihood" of her emotionally deteriorating in a work environment. *Id.*

11 The ALJ gave "little weight" to Dr. Russell's opinion because (1) he did not review the
12 longitudinal record, (2) he relied heavily on Ms. Kalmanoff's self-reports, and (3) he did not
13 describe his conclusions in terms of the extent to which Ms. Kalmanoff's mental capacities or
14 functions could or could not be performed in a work setting, and his conclusions did not
15 constitute an RFC assessment. Tr. 24. As discussed below, all of these reasons are erroneous.

16 As Ms. Kalmanoff argues, the ALJ improperly discounted Dr. Russell's opinion for lack
17 of an adequate records review because it is the Commissioner's responsibility to provide all
18 relevant medical records to consultative examiners. *See* 20 C.F.R. § 416.917; *Sneatlum v.*
19 *Astrue*, No. C12-715-RSL-JPD, 2013 WL 328141, at *6 (W.D. Wash. Jan. 4, 2013), *adopted by*
20 2013 WL 328113 (W.D. Wash. Jan. 29, 2013).

21 The ALJ also erred by discounting Dr. Russell's opinion as based primarily on Ms.
22 Kalmanoff's self-reports. The record does not suggest that Dr. Russell disbelieved Ms.
23 Kalmanoff's description of her symptoms or that he relied on those descriptions more than his

REPORT AND RECOMMENDATION - 8

own clinical observations. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."). Indeed, Dr. Russell conducted a mental status examination and found, among other things, acceptable but not optimal grooming, pain behavior when sitting and standing, slow reaction time, blunted and depressed affect, preoccupation with somatic complaints and pain, halting and hesitant speech, slow recitation of the alphabet with one error, unable to complete serial sevens, recall of only 2/3 objects after five minutes, and abandonment of second attempt to recite five digits backwards. Tr. 514-15. Dr. Russell also noted that Ms. Kalmanoff required redirection at times during the examination. Tr. 515. He concluded that her concentration was limited and her task persistence and pace were poor, uneven, unsteady, and unpredictable. *Id.* The Commissioner points to certain normal findings on the mental status exam to argue that the ALJ reasonably concluded that Dr. Russell's opinion was based on Ms. Kalmanoff's self-reports; however, taken as a whole, Dr. Russell's objective findings support his opinions regarding Ms. Kalmanoff's functional limitations. Accordingly, the ALJ erred.

Finally, the ALJ erred by rejecting Dr. Russell's opinion because of the lack of specificity in the language used to describe Ms. Kalmanoff's functional limitations. Instead of rejecting Dr. Russell's report on this ground, the ALJ should have contacted Dr. Russell to obtain additional information. *See* 20 C.F.R. § 416.919p(b) ("If the report is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report."). Indeed, the Commissioner does not defend the ALJ's reasoning on this point.

REPORT AND RECOMMENDATION - 9

Rather, she contends that any error was harmless because the ALJ properly rejected Dr. Russell's opinion as based on Ms. Kalmanoff's self-reports. But, as just discussed, the ALJ erred in this respect too, and therefore the error was not harmless.

### 3. *Non-examining doctors*

The only medical opinions that the ALJ gave weight to were those of the State agency non-examining physician, Robert Hoskins, M.D., and psychologists, James Bailey, Ph.D., and Sean Mee, Ph.D. Tr. 22-23. He found that the doctors were experts in the Social Security Disability programs and that their opinions were well-supported by the medical evidence. Tr. 23. The ALJ assigned these opinions "some weight" and incorporated the assessed limitations into the RFC. *Id.*

Ms. Kalmanoff argues it was error for the ALJ to adopt these opinions because they do not constitute substantial evidence. "[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). The Court concludes that Dr. Hoskins's opinion is supported by the medical records discussed above with respect to Dr. Lank. However, in light of the Court's determination that the ALJ erred with respect to Dr. Russell, the ALJ on remand should reevaluate the opinions of Dr. Bailey and Dr. Mee.

## C. **Remedy**

The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). Three elements must be satisfied for a court to remand for an award of benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ

REPORT AND RECOMMENDATION - 10

would be required to find the claimant disabled on remand."

*Garrison v. Colvin*, 759 F.3d 995, at 1020 (9th Cir. 2014).  The third requirement "incorporates what we have sometimes described as a distinct requirement of the credit-as-true rule, namely that there are no outstanding issues that must be resolved before a determination of disability can be made." *Id.* at 1020 n.26.  If all three requirements are satisfied, the Court must remand for an award of benefits unless "the record as a whole creates serious doubt that the claimant is, in fact, disabled . . . ." *Id.*  Here, further proceedings are necessary to obtain additional information from Dr. Russell or a new consultative psychological examination.  Accordingly, this matter should be remanded for further proceedings.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ should further develop the record as necessary, obtain either additional information from Dr. Russell or a new consultative psychological examination, reevaluate the opinions of Dr. Bailey and Dr. Mee in light of the newly developed record, and, as necessary, reassess Ms. Kalmanoff's RFC and proceed with steps four and five of the sequential evaluation process.  In addition, if the ALJ deems it appropriate based on the new evidence in the record, he may revisit his credibility determination and evaluation of Dr. Lank's opinion.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **January 5, 2015**.  If no objections are filed, the matter will be ready for the Court's consideration on **January 9, 2015**.  If objections are filed, any response is due within 14 days after being served with the objections.

REPORT AND RECOMMENDATION - 11

A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 22nd day of December, 2014.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12